THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN McCLURE, Defendant-Appellant.

First District (3rd Division)   No. 62498

Opinion filed October 7, 1976.

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Timothy Quinn, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Steven McClure was indicted for rape and armed robbery. At his trial he and the complainant, a widow with three children, agreed that they had sexual intercourse; he said it was with her consent and she said it was not. Evidence was introduced that she had a reputation as a prostitute; the jury accepted his version and acquitted him of rape. However, it found him guilty of robbing her while armed with a knife. The jury's verdict was approved at the trial court and the defendant was sentenced to the Department of Corrections for a term of 5 to 15 years.

McClure and the complainant met for the first time in a tavern on a

Sunday afternoon. He sat next to her at the bar and bought her a glass of wine. She testified that he offered to sell her a case of the same wine for $10. She agreed to buy it and he left the tavern, but returned in a few minutes and said she would have to go with him and pick it up herself. He testified that she offered him a date which he assumed to be for sexual purposes. He was on his way to work and said he did not have the time. He left the tavern, walked a block or two, changed his mind and went back. He asked the complainant if her offer was still good. She said it was and that it would cost $15.

He testified that he gave her the $15 and took her up the back stairs of the three-apartment building where he lived on the third floor with his mother-in-law, wife and three-year-old son. The second floor apartment was vacant and they stopped on the landing and had intercourse. He said that she then asked for another $15; he told her she was crazy, and left.

The complainant testified that she became alarmed as they went up the stairs so she started back down, telling McClure to bring the wine down. McClure ran after her, put a knife in her side and told her he would kill her if she screamed. He forced her back to the second floor and forcibly raped her. After this he went through her purse, throwing items on the floor as he looked for money. He found none and asked where it was; he said he knew she had some because she was going to buy the wine. She pointed to an inside pocket of the purse which contained $60. When he unzipped the pocket she grabbed the knife he was holding loosely. He hit her in the face and she fell against the wall. He came at her again and she threw the knife away. He struck her again and ran down the stairs.

■■ McClure contends that prejudicial trial errors were responsible for his conviction. The alleged errors, however, relate chiefly to the charge of rape for which he was acquitted. The first of these was the refusal of the trial court to permit a defense witness to testify that seven years earlier the complainant had accused him of rape when he refused to pay after having sexual intercourse with her. The court would not permit this testimony because it was a single incident outside the complainant's general reputation for chastity. The testimony, however, was not offered to prove her reputation, but to suggest her motivation in bringing the current charge—an incident demonstrating a common design to use criminal prosecution as retribution against men who did not pay all she wanted for her sexual services.

■■ The State argues that the defendant did not cross-examine the complainant about the prior incident and hence failed to lay a foundation for the witness' testimony. A foundation would have been necessary if the purpose of the proffered testimony had been to impeach something the complainant had said while testifying (see *People v. Rainford* (1965),

58 Ill. App. 2d 312, 208 N.E.2d 314), but this was not its purpose. Its purpose, as we have said, was to show her predilection under certain circumstances to charge men with rape. The testimony should have been admitted, but we do not think its exclusion was of prejudicial dimension in light of the remoteness of the incident, the other evidence of the complainant's morals and, particularly, the finding of not guilty on the rape count.

A second and more serious error occurred during the prosecutor's cross-examination of McClure. He was asked whether he had told his wife or his mother-in-law of the proposition supposedly made to him in the tavern by the complainant. He replied that he had told no one. Despite this response, the prosecutor persisted:

> Assistant State's Attorney: "Did you ever tell police officers that arrested you for raping and robbing that woman—"
> Defendant: "I told no one."
> Assistant: "—that woman, that it was not a rape and armed robbery, and she consented to it because she was a prostitute?"
> Defendant: "I told no one."
> Assistant: "This is the first time, today, in court—"
> Defendant's Attorney: "Objection, Judge."

The prosecutor's questions carried the implication that McClure would have told the police about the complainant's proposal if in fact she had solicited him. The questions were highly improper. A defendant has the constitutional right under the Fifth Amendment to remain silent during custodial interrogation. His silence can be attributed to reliance on this right and may not be used to support an inference that his trial testimony was a later fabrication. (*United States v. Hale* (1975), 422 U.S. 71, 45 L. Ed. 2d 99, 95 S. Ct. 2133.) It is also a violation of the due process clause of the Fourteenth Amendment to use a defendant's post-arrest silence to impeach his trial testimony. (*Doyle v. Ohio* (1976), ___U.S. ___, 49 L. Ed. 91, 96 S. Ct. 2240.) See also this court's decision in *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18.

The trial court sustained the objection to the inquiry and promptly instructed the jury:

> "Ladies and gentlemen of the jury, I would sustain the objection to the question as to whether or not he told the police.
> I will advise you, please, to disregard the question and the answer, if you got the answer, and, of course, the colloquy between counsel on the objection.
> I would further advise you that everyone, yourself and myself included, has a fifth amendment right upon arrest to say nothing to anyone. Whether or not the defendant in this case exercised that

right is immaterial. He need not say anything to anyone. His answer remains that he said nothing to anyone concerning the circumstances of the crime."

The court's admonition was complete and emphatic. It was far more comprehensive than that in *Hale* where an objection to a similar question was sustained, but the jury was merely told that the question was improper and to disregard it. Also, in *Hale* there was no claim (as there is in this case) that the strength of the prosecution's case rendered the question harmless. In *Doyle* and in *Wood* the defendants' objections to the prosecutors' questions were overruled and the trial courts permitted the prosecutors, over more objections by defense counsel, to argue the defendants' post-arrest silence to the jury. Similarly, in *Wright* the defense objections were overruled and the prosecutor, unlike the present case, commented on the defendant's silence in his final argument.

■■ An error involving infringement of a defendant's constitutional rights can be held harmless by a reviewing court only if the court is able to declare beyond a reasonable doubt that the error was harmless. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The prosecutor's inquiry about McClure's failure to inform the police of the complainant's solicitation was error, but in our opinion the error was harmless beyond a reasonable doubt. Not only was the court's instruction corrective of the potential damage, but there is objective evidence that the defendant was not harmed by the inquiry since he was found not guilty of rape, which was the crime to which the prosecutor's question was directed. Moreover, the jury's verdict of guilty on the charge of armed robbery was supported by overwhelming evidence.

Ollie Combs and his wife Willa Mae lived on the first floor of the three-story building where the robbery took place. They knew McClure and had been in his apartment. About 3:15 in the afternoon the day of the robbery they heard bumping and stomping on the vacant second floor of the building. Shortly thereafter, they saw McClure run down the back stairs, two or three steps at a time, and out the back gate. The complainant then came down the stairs. She was crying and had a knife in her hand. The Combses let her in. She said she had been raped and robbed. She gave the knife to Combs and asked him to call the police. Mrs. Combs recognized the knife; she had seen it in McClure's possession on prior occasions—once when he was peeling an apple in his kitchen. Before the police were called Mrs. Combs went to the second floor. There was an empty purse on the floor and its contents were spread all over. The Combses telephoned McClure's mother-in-law and she came down to their apartment. The complainant was shaking and the blouse was out of her pants and there was dirt on them, but the Combses did not notice any marks on her face.

The police checked the second floor and recovered the complainant's purse and the scattered contents. After taking her to a hospital and visiting the tavern where she had met McClure, they spoke to his mother-in-law and mother. They told them of the allegations against him and instructed them to have him call the police.

Although he received the messages, McClure did not contact the police. He eluded them for over two months. During this time he neither returned home nor reported for work. He secreted himself in a different part of the city and went to his place of employment only once and then to get his back pay.

McClure asserts that his action did not amount to flight because he stayed within the city limits and returned to the place where he had been employed, turned in his identification card and received a salary check; that the complainant's testimony was contrary to ordinary human experience in that she said he struck her in the face with enough force to knock her against a wall, yet she had no bruises and a medical examination showed that her heartbeat and blood pressure were normal; that she said she seized his knife by the exposed blade, yet her hand was not cut; that she said she screamed after he struck her, yet the Combses heard no screams; and that since the jury did not believe her testimony about being raped it should not have believed her when she said she was robbed.

■■ McClure's failure to return to his wife and child and place of employment and his avoidance of the police constituted flight. A hard blow will not necessarily produce a bruise, and since the complainant was examined medically approximately two hours after the robbery, there was plenty of time for her pulse and blood pressure to subside. She said when she seized McClure's knife he was holding it loosely while he was taking the money from her purse and that it slipped right out of his hand. The Combses heard no screaming, but they did hear noise on the floor above them and the complainant came to their door crying, trembling and distraught; she made an immediate complaint of rape and robbery and asked that the police be called.

■■ It is within the province of the trier of fact to decide which story is to be believed when conflicting evidence is presented. Rape and robbery are distinct offenses, each with its own elements which must be proved beyond a reasonable doubt in order to support a conviction. (*People v. Harper* (1972), 50 Ill. 2d 296, 278 N.E.2d 771.) Thus, where the evidence concerning a sexual offense is weaker than the evidence concerning a robbery, there is no basic inconsistency in a jury finding a defendant not guilty of the former but guilty of the latter. (*People v. Montgomery* (1973), 16 Ill. App. 3d 127, 305 N.E.2d 627.) It is evident that the jury believed McClure's defense of consent; but it did not believe his story

about the separate offense that followed the act of intercourse. There was nothing illogical about this distinction. The evidence that he was guilty of the armed robbery charge was not only stronger, but it was indeed overpowering.

The judgment is affirmed.

Affirmed.

MEJDA, P. J., and McNAMARA, J., concur.