Jessie Houston, the appellant, was indicted for the first degree murder of his wife. A jury found him guilty of manslaughter in the first degree and fixed his punishment at ten years imprisonment. Accordingly the trial judge entered judgment and sentence from which Houston appeals. Houston has been ably represented by retained counsel both at trial and on appeal. *Page 826 
We are presented with two issues on appeal: (1) The prosecutor's comments on the post-arrest silence of the accused and (2) the admission of a photograph of the deceased.
For the most part the facts are not disputed. On August 20, 1974, Houston was scheduled to pick up his wife from work at 11:00 P.M. at the Carraway Methodist Hospital in Birmingham, Alabama. Having been drinking that afternoon, Houston was late in arriving for his wife. When Mrs. Houston got in the car she made a remark about the fact that her husband had been drinking and slapped him. The argument continued and Mrs. Houston kept slapping and hitting her husband. Finally she hit him in the eye with her fist and almost caused Houston to wreck the car. After this the evidence is in dispute.
In a transcribed version of a tape recorded confession, Houston stated that "I just jumped out (of the car) and I just started ___. When she said she was shot. I turned around and took her to the hospital." Sergeant Albert Wallace of the Birmingham Police Department testified that he took Houston's confession and that, before the statement was tape recorded, Houston told him that he got out of the automobile and then shot his wife.
At trial, Houston denied making this statement and testified that after his wife hit him in the eye he saw her reaching for a pistol which he kept under the driver's seat. A struggle ensued and a number of shots were fired while both Houston and his wife were inside the car. Then Houston got out and realized that he had the pistol in his hand.
Mrs. Houston was shot twice in the back under the shoulder blade. The pistol was fired four times. There were no powder burns or residue on either Mrs. Houston's clothing or body. A toxicologist testified that the wound (both bullets entered at approximately the same location) was neither a "contact wound" nor a "near contact wound."
 I
The major issue presented by this appeal is whether the state prosecutor may comment on either the silence or refusal of the accused to make a statement after his arrest and after he has been advised of his Miranda warning. Because this is an issue of first impression before this court and because of the importance we attach to that issue, we find it necessary to quote at length from the trial record.
The first objected to remarks were made by the prosecutor in his opening argument to the jury.
 "MR. JOHNSON: No questioning was done of Jessie Houston, done at this time. He didn't offer to make any statements to them. The police officers found out his name —
 "MR. WAITES: We object to this. I'm sorry to interrupt.
"THE COURT: That's all right.
 "MR. WAITES: But he's making comments about this man not making a statement. That is improper. At no time can the prosecutor comment on something like that. I object to it, may it please the Court.
"THE COURT: Sustained.
 "MR. JOHNSON: Your Honor, that is in no way commenting about the evidence. That is just what I expect the evidence to show. There was no statement made.
 "THE COURT: I understand that but I further understand the defendant is not required to make a statement.
"MR. JOHNSON: I understand that.
 "THE COURT: The jury may not understand that. I sustain the objection and instruct the jury that the defendant at no time has to make a statement unless he desires to do so after proper warnings.
 "MR. JOHNSON: The point is there was no statement made there. That is the point I want to make.
"MR. WAITES: Sorry, I have to object again.
"THE COURT: Overruled.
"MR. WAITES: We except.
 "MR. JOHNSON: Jessie Houston was taken to the Homicide Bureau of the Birmingham City Hall. There he was asked if he would make a statement and he said he didn't want to — *Page 827 
 MR. WAITES: Now that is what I object to, the whole thing, may it please the Court. That is improper. A man has a right to stand on his right not to make a statement and the fact that he refused at some point not to make a statement or any indication of that is improper. It is improper argument and improper testimony.
 "THE COURT: I will sustain the objection. I have already instructed the jury that the fact that he did not make a statement is of no significance whatsoever. He is not required to make a statement in anywise, shape or form.
 "MR. JOHNSON: Of course, Your Honor, that is very true and Mr. Waites can bring all of that up in his closing argument but I am just telling them what the evidence is going to be.
 "THE COURT: I understand that but I think it is objectionable.
 "MR. JOHNSON: Well, eventually he did make a statement —
 "MR. WAITES: Now I object to that, if your Honor please, eventually. Again it is implying that he did make a statement at some point.
"MR. JOHNSON: He did make a statement.
"THE COURT: Overruled.
"MR. WAITES: We except."
In the state's direct and redirect examination of Sergeant Wallace, the prosecutor adduced testimony of the fact that Houston refused to make a statement following his arrest.
 "Q. Did you ask him whether or not he wished to make a statement at that time?
 "A. Yes, sir, having these rights in mind, do you wish to talk to us now.
"Q. What did he say?
"A. He said no.
 "MR. WAITES: We object to the question and object to the answer and we move that be excluded, may it please the Court.
 "THE COURT: Overruled. I've already instructed the jury on that I think at the time we had the voir dire.
"MR. WAITES: We except, may it please the Court."
* * * * * *
 "Q. What happened up there? Did you drink coffee? Was there a period where you all had coffee or something like that before you started talking?
"A. No, sir.
"Q. What happened, as you recall?
 "A. Like I say, I advised him of his rights and he at that time said he didn't wish to make a statement.
 "MR. WAITES: Sorry Judge, I believe I have to object to that to protect the record, and I do.
"THE COURT: Overruled, we have gone into that."
And finally, in closing argument, the prosecutor again referred to the refusal of the accused to make a statement following his arrest.
 "MR. ROGERS: . . . had four hours to think about what he was going to say. The first time, no, I don't want to talk —
 "MR. WAITES: I object to that, may it please the Court, an improper statement about the defendant exercising constitutional rights.
"THE COURT: Overruled.
"MR. WAITES: We except."
The principle forbidding the prosecution to use evidence of defendant's post-arrest, post-Miranda warning silence for substantive purposes or as evidence of defendant's guilt is soundly established and based on fundamental principles of our jurisprudence. In Miranda v. Arizona, 384 U.S. 436, 468, n. 37,86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966) the Supreme Court of the United States announced in dictum that
 "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."
Though this issue has never been before the Supreme Court, lower federal courts have uniformly held that a defendant's silence *Page 828 
during police custody and interrogation cannot be admitted on the question of guilt. F. O'Keefe, "Impeachment By Silence," 25 Cleveland State Law Review 261, 271, n. 65. See also Wigmore, Evidence § 821, n. 3 (J. Chadbourn rev. ed. 1970) for a listing of recent state cases which have considered the effect ofMiranda on tacit admissions (silence) by the accused. On this issue it has been asserted that the court's pronouncement in the Miranda dictum "leaves little doubt that silence or a claim of the privilege made in response to a police accusation during custodial interrogation is inadmissible." C. McCormick, Law of Evidence § 161 (2d ed. 1972); Booton v. Hanauer, 541 F.2d 296,298 (4th Cir. 1976). Generally see West Digest, both federal and state, under Criminal Law, Key Number 407 (1).
Not only is the prosecutor forbidden to use as evidence of substantive guilt the fact of defendant's silence following his arrest and Miranda warnings but the state may not constitutionally impeach a defendant's trial testimony with proof of post-arrest silence. Doyle v. Ohio, 426 U.S. 610,96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976).
 "Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda
rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, 422 U.S. [171] at 177, 95 S.Ct. [2133], at 2137 [45 L.Ed.2d 99]. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. Mr. Justice White, concurring in the judgment in United States v. Hale, 422 U.S., at 182-183, 95 S.Ct., at 2139, put it very well: "`. . when a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . . Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from Miranda warnings that this would not be the case.'" Doyle, supra, 96 S.Ct. 2244.
It is the opinion of this court that Doyle, supra, and the considerable body of case law both prior to and in the wake ofMiranda give the force and effect of law to the Miranda dictum. Thus we hold that the use of the post-arrest, post-Miranda
warning silence of the accused as evidence of his guilt is a violation of the Due Process Clauses of both the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901. An accused has the constitutional right to remain silent following arrest and where the accused remains silent, his silence can be attributed to reliance on this right. That silence may not be used to support an inference that his trial testimony is a later fabrication. People v. McClure, 42 Ill. App.3d 952, 1 Ill.Dec. 617, 356 N.E.2d 899 (1976); United States v. Moore,484 F.2d 1284 (4th Cir. 1973). Counsel for the prosecution must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent. United States v.Wycoff, 545 F.2d 679, 682 (C.A.Cal. 1976).
A comment on or evidence of the post-arrest silence of the defendant or his refusal to give a statement may not be ineradicable and may be cured by prompt corrective action by the trial court. Jones v. Wyrick, 542 F.2d 1013 (C.A.Mo. 1976);McClure, supra. An error involving an infringement of a defendant's constitutional right can be held harmless only if the court is able to declare beyond a reasonable doubt that the error was harmless. Chapman v. *Page 829 California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Here the error was not harmless. On four separate occasions throughout the course of the trial reference was made to the fact of the defendant's silence. Only on one of these occasions did the trial judge sustain defense counsel's objection and instruct the jury. Had the trial court sustained the objections, instead of overruling, and admonished the jury that the argument was improper, the prosecutor's comments would not have constituted reversible error. Adkins v. State, 265 Ala. 666, 93 So.2d 522 (1957).
 "When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error. . . .
 "The infusion of `harmlessness" into error must be the exception, and the doctrine must be sparingly employed. A miniscule error must coalesce with gargantuan guilt, even where the accused displays imagination of Pantagruelian dimensions." Chapman v. United States, 547 F.2d 1240, 1250 (5th Cir. 1977).
In this instance we cannot declare beyond a reasonable doubt that the prosecutor's comments were harmless because of the prosecutor's continuing references to the silence of the accused and the failure of the trial court to sustain each and every objection by defense counsel to the improper argument and testimony.
 II
In view of our decision we specifically refrain from ruling on the admissibility of the photograph of the deceased. However, on retrial, we strongly urge the state to reevaluate the necessity for the introduction into evidence of such a picture in light of the argument advanced by the appellant on appeal against its admissibility.
Because of the several references to the silence of the accused following his arrest and Miranda warning the judgment of conviction is due to be reversed and remanded for new trial.
REVERSED AND REMANDED.
All Judges concur.