This is an appeal from a conviction of murder in the first degree and a sentence to imprisonment for life.
There is no disagreement between the parties on appeal as to the facts. Appellant's short statement of the facts is adopted by appellee. We deem it sufficient basis for our summary of the facts material to the issues on appeal.
Witnesses for the State, Mr. and Mrs. Roger Whatley, stepson and daughter-in-law of appellant, testified that they were in the Wilkinson Trading Post in Bucksville, Tuscaloosa County, Alabama, on the afternoon of January 26, 1977, when they heard a loud noise that they presumed to be a Coca Cola bottle exploding. Shortly thereafter, they saw Mrs. Wilkinson, the alleged victim of the homicide, at the door separating the store from the living quarters, and saw appellant, the alleged victim's husband, step to the door and shoot Mrs. Wilkinson. They said that when Roger Whatley first came to the trading post that day, he went straight to the back of the store into the living quarters. Roger testified that Mrs. Wilkinson told him he should not be there.
According to the testimony of appellant, Roger Whatley came to the trading post on the afternoon of January 26, 1977, and came back to the living quarters where appellant was seated and started complaining about appellant's not working and about his drinking. Appellant then asked Roger to leave and Roger said that he "would get a gun and see who would leave the premises." Mrs. Wilkinson also asked Roger to leave, stating that "he didn't have any business there and knew better than to be back there arguing." Mrs. Wilkinson then followed Roger into the store part of the premises. Appellant heard Roger threatening to kill him and shortly thereafter he heard his wife yell, "No, Roger," and then heard a shot come through the closed door into the living quarters. At that point, appellant fired back with a pistol he had in the living quarters, following which the door came partially open and he saw an outline of a person at the door. Appellant fired several shots and then immediately left because he feared that Roger had a loaded gun outside the door. According to testimony of witnesses for the State and appellant, appellant left the scene after the shooting in a green 1968 Buick LaSabre. He had a wreck in the LaSabre near the Green Pond-Woodstock area where some construction was being done on the road. He then hitchhiked back to the trading post where police had arrived and was there arrested.
The evidence shows conclusively that two bullets from the pistol fired by defendant penetrated vital regions of Mrs. Wilkinson's body and that one penetrated her heart and caused her death.
The major issue on appeal is as to the action of the trial court with reference to questions asked defendant on cross-examination as to what he had told prior to taking the stand as a witness. State's counsel had already conducted a lengthy cross-examination of defendant, in which defendant's testimony on direct examination had been substantially covered, when the following occurred:
 "Q You told all the investigators this, of course, didn't you?
"MR. BURROUGHS: We object to that, Your Honor.
"MR. SOGOL: We object to that.
"THE COURT: Overruled. *Page 402 
"MR. BURROUGHS: Except.
"MR. SOGOL: We object, Your Honor.
 "THE COURT: That he told the investigators that? What is wrong with that?
 "MR. BURROUGHS: He would have to show us — he would have to lay a predicate, the miranda warning and everything.
 "MR. SMITH: I'm not trying to introduce any statements. I'm asking if he told them, that is all.
"THE COURT: Overruled.
"MR. BURROUGHS: We except, Your Honor.
"THE COURT: Go ahead.
"Q Did you?
"MR. BURROUGHS: Your Honor —
 "THE COURT: I have ruled. I don't want to hear anymore. You can state your grounds, but I overrule the objection.
 "MR. BURROUGHS: I understood in this court the defendant had a right to remain silent.
"THE COURT: Certainly, he has. I don't dispute that.
 "MR. BURROUGHS: Unless they lay a proper predicate as to when and what time or if he was ever asked or whether he told them anything or not.
 "THE COURT: Well, maybe later on, but not at this point.
"MR. BURROUGHS: We except, Your Honor.
"THE COURT: All right, go ahead.
"THE WITNESS: Am I directed to answer?
"THE COURT: Yes, answer the question.
"Q Have you ever told this story before?
"A No, sir.
 "Q This is the first time you have ever told that story, isn't it?
 "A Mr. Burroughs came over and interviewed me at the jail.
". . . ."
Appellant relies largely upon the recent case of Houston v.State, Ala.Cr.App., 354 So.2d 825 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 825 (Ala.Cr.App. 1977), in which it was held that the post-arrest silence of an accused could not be used to support an inference that his testimony on the trial is a later fabrication. In an exemplary opinion by Judge Bowen in Houston, it is stated:
 "It is the opinion of this court that Doyle, supra,[1]
and the considerable body of case law both prior to and in the wake of Miranda[2] give the force and effect of law to the Miranda dictum. Thus we hold that the use of post-arrest, post-Miranda warning silence of the accused as evidence of his guilt is a violation of the Due Process Clauses of both the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901. An accused has the constitutional right to remain silent following arrest and where the accused remains silent, his silence can be attributed to reliance on this right. That silence may not be used to support an inference that his trial testimony is a later fabrication. People v. McClure, 42 Ill. App.3d 952, 1 Ill.Dec. 617, 356 N.E.2d 899 (1976); United States v. Moore, 484 F.2d 1284 (4th Cir. 1973). Counsel for the prosecution must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent. United States v. Wycoff, 545 F.2d 679, 682 (9th Cir. 1976)."
Appellee expressly recognizes the soundness of the proposition clearly set forth in Houston but replies to appellant's argument for a reversal chiefly upon the following grounds:
 ". . . It is the State's contention that the questions asked by the prosecutor were not prejudicial to the defendant. . . .
 "It is the State's contention that if the facts of the case at hand are applied to the test as outlined above [contained in a quotation from Chapman v. U.S., *Page 403 
 547 F.2d 1240 (5th Cir. 1977)] it must be said that the error complained of was harmless. . . .
 ". . . It is also equally apparent that the defendant's `exculpatory story is transparently frivolous.'[3] Thus in light of the overwhelming evidence against the defendant at trial it must be said that the error complained of was harmless."
We have some doubt whether the proposition so strongly advanced on appeal was sufficiently raised on the trial as to furnish a basis for reversible error, but as no such contention is made on appeal, we think that in the light of the overriding importance of the constitutional principle involved we should resolve that doubt in favor of the one whose constitutional right has been allegedly violated.
 "An error involving an infringement of a defendant's constitutional right can be held harmless only if the court is able to declare beyond a reasonable doubt that the error was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)." Houston v. State, supra, p. 828.
Not only do we feel that it cannot be declared beyond a reasonable doubt that the quoted cross-examination of defendant, with the approval of the court, was harmless, but we cannot say that we are reasonably satisfied that it was harmless. It seems to us that it was highly prejudicial for defendant to have been subjected to an open disclosure to the jury that he had theretofore relied upon his constitutional right to remain silent. Irrespective of the purpose of the State in evoking that disclosure, the only value to the State of the disclosure was in its supporting "an inference that his [defendant's] trial testimony is a later fabrication." Just as it was of value to the State it was correspondingly a detriment to defendant.
We appreciate the occasion for harmless error on the subject when "the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming" as noted inChapman v. United States, supra, relied upon by appellee, but we do not agree with appellee that either of the essentials of harmlessness (conjunctive not disjunctive) as found in Chapmanv. United States, supra, that the "exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming" is shown by the evidence in the case on review. That there was strong evidence for the State, we have no doubt, but we cannot say that the testimony of defendant was frivolous; nor can we say that the evidence of guilt of murder in the first degree, of which he was found guilty, was overwhelming. We can well discern that a jury very likely would have found defendant guilty of murder in the second degree or even perhaps manslaughter in the first degree had it not been brought emphatically to their attention that he had never "told this story before" during a period of approximately ten months since his wife was killed.
It was reversible error for the trial court to permit, over the objection of defendant, testimony to the effect that what defendant said in his own behalf had never been said by him before.
In its oral charge to the jury on the subject of self-defense, the court said:
 "Further, the law says that no one is excused from taking a human life, if he could have retired or retreated from the combat with safety to his own person. If there was an avenue of retreat available to the defendant and he knew of that avenue of retreat, or if he had knowledge of an avenue of retreat and he could have used it — Now, let me point this out to you, ladies and gentlemen, the defendant says he was in his own home at the time of this occurrence and that therefore he was under no legal obligation to retreat, if the other elements were present. That is correct. You don't have to retreat from your own home, but the other elements must be present; that is, freedom from fault, and there must be an actual or apparent danger. So the three elements of self-defense, I will repeat it, the *Page 404 
defendant must be solely free from fault in provoking the difficulty. The defendant's belief, and there must be reasonable ground for the belief, that he was in imminent or immediate danger of his life, or great bodily harm, and the defendant must retreat if he could do so with safety to his person, but not necessary where the defendant is in his own home. That is the exception to the rule of self defense, but it goes back to this, it is going to be up to you ladies and gentlemen of the jury to decide from the evidence whether or not the defendant should be found not guilty by reason of said defense."
At the conclusion of the oral charge, the trial judge directed the jury to go to the jury room and wait "while I talk with the lawyers" and not commence deliberations until the exhibits were brought to them. Meanwhile, the following occurred:
"THE COURT: All right, I will hear your exceptions.
 "MR. SOGOL: Your Honor, the defense would initially object to Your Honor's charge in the area of self defense in that it is the defense contention that the evidence in this case is uncontradicted that the defendant was in his own home and that therefore there is as a matter of law, no right to retreat, and we submit no duty, excuse me, no duty to retreat, and we submit, Your Honor, that should not have been included in Your Honor's charge under the elements of self-defense and that it is not an element of self-defense in this case.
"THE COURT: I thought I made that clear.
 "MR. BREELAND: Your Honor, the evidence is not clear that he was in his own home.
 "THE COURT: Well, I said let the jury decide it. Go ahead, I will overrule."
Although there are some indications in the evidence that defendant and his wife were preparing to separate and perhaps at the time of the fatal occurrence were to some extent living separate and apart, the evidence is without dispute that at that time defendant and his wife were both occupying and living at the premises where the shots were fired by defendant. In such a state of the record, the court's charge runs afoul of what we held in Usrey v. State, 54 Ala. App. 448, 309 So.2d 485
(1975), that the court's charge that the doctrine of retreat did not apply to one who slays another at his own home but that it was for the jury to determine the right of accused to be "where he was and what right he had to be where he was at any particular time" constituted reversible error. There may be some basis for argument that the quoted part of the court's oral charge in the case before us did not in fact submit a factual question for the jury to decide as to defendant's duty to retreat, but as the trial court so construed it by the statement, "Well, I said let the jury decide it," and it is reasonably subject to such an interpretation, we construe it accordingly.
We do not hold that it is necessarily prejudicially erroneous, in a homicide case in which the evidence shows conclusively that defendant is under no duty to retreat, for the court to mention the ordinary rule that requires a retreat but also declare that defendant owed no such duty. It could well be that a charge accordingly would be harmless, perhaps more than fair to defendant under some circumstances. In accordance with Usrey, supra, however, it was prejudicial error for the court to charge that it would "let the jury decide" whether defendant came within the exception to the usual requirement of retreat, when the evidence is, as it was inUsrey, "unequivocally clear that the appellant was in his own home" at the time of the alleged homicide.
For the reasons indicated, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur.
[1] Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91
(1976).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[3] Chapman v. United States, 547 F.2d 1240, 1250 (5th Cir. 1977). *Page 405