Appellant-defendant was tried on an indictment charging him with buying, receiving, concealing or aiding in concealing personal property knowing that "said property was stolen or having reasonable grounds for believing that it was stolen and not having the intent to restore it to the owner." The property was described as "a RCA color television of the approximate value of $350.00 and a jewelry box containing assorted jewelry of the approximate aggregate value of $250.00, the personal property of Melba W. and James Irvin Spiller."
A jury found defendant guilty "as charged in the indictment," and the court sentenced him to imprisonment for eight years.
The evidence shows without dispute that on the night of February 22-23, 1978, the residence of Mr. and Mrs. Spiller in Chickasaw, Mobile County, Alabama, was burglarized and the property described in the indictment taken therefrom.
About 6:00 on the evening of February 22, a security guard for an industry in the area of Chickasaw, while on his way to work observed a red Ford automobile standing at an intersection in Chickasaw with its motor running. There were three black individuals in the automobile and a fourth black individual between the automobile and a house that appeared to be unoccupied. The fourth individual came to the automobile and entered it. The security guard further testified as a witness for the State that he took down the number of the license plate of the automobile and reported the occurrence to the Chickasaw Police Department when the security guard arrived at his place of work.
About 10:30 the same night, according to the testimony of Detective Joe Smiley, of the Prichard Police Department, while patrolling and having received a relayed message as to the red Ford automobile with the license number given, located the automobile at the dead end of Day Street, called for backups and went to the automobile. He talked to the occupants thereof, who consisted of four black males. He knew all of them, including defendant. In the automobile were the television set, a jewelry box containing assorted jewelry, shown by the evidence to be the property alleged in the indictment, and other items of personal property. The TV set was between defendant and the other person sitting with him in the back seat. The witness said the occupants began to "tell him different stories. One went to tell me that they found the TV and I looked over in the car and there was all kinds of jewelry lying all over the car and some of the jewelry was under the passenger's side of the car and the rest of it was lying on the seat. The jewelry box was sitting on the floor board."
Defendant and the other three men were arrested. Either the first name or the last name of the other three was called during the testimony, but they were not well identified by the evidence. Defendant in his *Page 1254 
testimony called them Sherman, Henry and Raymond. There was some evidence to the effect that one or more of them had pleaded guilty. Whether to the crime of burglary, larceny or buying receiving or concealing stolen property, is not shown.
According to the testimony of defendant, he had been at his girl friend's house to about 9:00 or 9:15 that night and was headed "around to Sheppard's Lounge" when he was picked up by Sherman, Raymond and Henry and another man by the name of Adolph, on Main Street. Defendant said that Adolph lived at the house close to where they stopped, and that as the officers came up to the automobile Adolph walked away and passed out of sight. Defendant denied having any part in the burglarization of the Spiller home or the larceny of any of the property. He said that Sherman had stated that they found the television set in the bushes. After he arrived at the police department a medallion was found in defendant's pocket, which was identified as property of Mr. Spiller that was in the jewelry box. Defendant stated that this medallion had been given to him by Sherman while they were in the automobile.
On cross-examination of defendant, the State showed that he had made several statements to investigating authorities that were substantially at variance with his testimony. On rebuttal, the State presented the testimony of Assistant Chief of Police William Pierce of the Chickasaw Police Department, who said that he interviewed defendant the night of the burglary and arrest and took a statement from him as follows:
 "Me, Henry and Raymond and Sherman were just riding around. He, Sherman, picked us up at 9:30 or 10:00 P.M. 2-22-78. Us being me, Henry, and Raymond. Picked up at parking lot. We at Raymond and Henry's house. They just live next to each. We were going to see a Randy or something. Sherman had a TV in car when he picked us up. TV on back seat and middle. Sherman driving. Henry passenger's side, front seat. Raymond was in the back seat behind Henry and I was in back seat behind Sherman. TV was in the middle between me and Raymond. Sherman said he got TV in bushes at William D. Robbins School. Said he had found it a little before he had picked us up. TV screen facing front of the seat. If touched TV it would have been on top and on left side and not the right side. Going straight to Randy's house. We never stopped anywhere until the police stopped us. All of us were in the car. Have not been in Chickasaw tonight since sun went down. Last time was in Chickasaw was about several years ago, three or four years."
Defendant had signed the statement.
A major insistence of appellant is upon application of a principle set forth in Booker v. State, 151 Ala. 97, 44 So. 56
(1907) and Gallman v. State, 29 Ala. App. 264, 195 So. 768
(1940) to the effect that where the evidence shows that accused came into possession of stolen property solely through his participation in the burglary of a house, he cannot be convicted for buying or receiving and concealing stolen property. The principle is inapplicable in this case, for the evidence does not show that appellant participated in the burglary. That he may have done so cannot be reasonably doubted, but there is no definite evidence to that effect. On the contrary, defendant's own testimony stands as undisputed repudiation of that theory.
Another major insistence of appellant is that there was error in the overruling of an objection by defendant to a question (or statement) addressed to Assistant Chief (Lieutenant) William Pierce on redirect examination by State's counsel:
"By Mr. Handley:
 "Q Lieutenant, for all you know, after this preliminary statement was taken Mr. Craig hired a lawyer and his lawyer wouldn't let him answer any more questions, for all you know?
"MR. GONAS: Objection.
"MR. HANDLEY: Judge, he got into all of this.
"THE COURT: Overruled.
"BY MR. HANDLEY: *Page 1255 
"Q For all you know?
"A For all I know.
"MR. HANDLEY: Thank you.
"THE COURT: Anything further?
"MR. GONAS: I have nothing.
 "THE COURT: You may step down, officer. Thank you very much, lieutenant."
No further evidence was presented, and soon thereafter arguments of counsel commenced.
Appellant argues that that which is shown above as the questioning of State's counsel on redirect examination of Lieutenant Pierce constitutes an impermissible comment on the right of an accused to remain silent guaranteed him by the Fifth Amendment to the Constitution of the United States and a resultant violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901. Appellant relies largely upon Houston v. State, Ala.Cr.App., 354 So.2d 825
(1977), cert. denied 354 So.2d 829 (1978), in which by reason "of the several references to the silence of the accused following his arrest and Miranda warning the judgment of conviction" was reversed and the case remanded for a new trial. The opinion therein by Judge Bowen treats the issue as one "of first impression before this court," contains a comprehensive analysis of authorities on the subject and constitutes a valuable guide to those confronted with related problems arising thereafter. Appellee attempts to distinguish instant case from Houston by emphasizing that in Houston the comments were as to defendant's refusal to make a statement after he was arrested but that in the instant case the defendant made a statement or statements and the comment was as to his silence, enforced by his lawyer, after he had made a statement. There is a difference in the two cases as to the time of the silence as to which the comment was made, but there is no time limit upon the right of an accused to remain silent. The rationale ofHouston is applicable here and what was said in Houston is controlling here, particularly:
 "It is the opinion of this Court that Doyle, supra, [Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976)] and the considerable body of case law both prior to and in the wake of Miranda give the force and effect of law to the Miranda dictum. Thus we hold that the use of the post-arrest, post-Miranda
warning silence of the accused as evidence of his guilt is a violation of the Due Process Clauses of both the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901. An accused has the constitutional right to remain silent following arrest and where the accused remains silent, his silence can be attributed to reliance on this right. That silence may not be used to support an inference that his trial testimony is a later fabrication. People v. McClure, 42 Ill. App.3d 952, 1 Ill.Dec. 617, 356 N.E.2d 899 (1976); United States v. Moore, 484 F.2d 1284 (4th Cir. 1973). Counsel for the prosecution must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent. United States v. Wycoff, 545 F.2d 679, 682 (9th Cir. 1976)."
In an effort to extenuate the question or comment of counsel for the State, appellee says that it was "offered to rebut the inference made by defense that the witness Pierce had been somewhat negligent as regarding the taking of an in-depth statement." The first reference to an "in-depth statement" was made by Lieutenant Pierce during his direct examination. He said in answer to the question of State's counsel as to how he "took that statement, the manner in which" he took it:
 "Well, there was a haste in interviewing so many people that I did what I called a preliminary statement. It is simply a matter of me sitting down with an individual, going through the rights formality and, then, I ask the questions and hurriedly write down his answers but not necessarily the questions. I do it to get a — on a piece of paper for a later more in-depth statement." *Page 1256 
 "Q Now, is this a capsule form of the answers to your questions?
"A Yes, it is.
"Q Did he sign it?
"A Yes, sir.
"Q Okay. Would you please read it to the jury?"
Thereupon the witness read the statement signed by defendant that is hereinabove quoted. On cross-examination, defendant's counsel interrogated the witness as to whether he had taken such an in-depth statement from defendant. He had the right, and possibly the duty, to do so. He was attempting by his questions to show, as he had the right to do if he could, that the statement, which formed neither a question-and-answer statement, nor a word for word statement of defendant in narrative form (but what the witness deemed to be the substantial equivalent of both) was not as reliable under the circumstances as an in haec verba written statement of the conversation between the witness and defendant. It may be true that counsel asked too many questions along the particular line, for the trial court sustained the State's objections to a repetition of such questions, and thereafter the cross-examination of the witness continued as follows:
 "Q When is the last time you saw this statement before yesterday?
 "A The next morning it was in the folder file folder on the case.
"Q Approximately a year ago?
"A Approximately.
"Q Did you review the statement yesterday?
"A No, sir.
"Q Did you review the statement today?
"A Yes, sir.
"Q And the last time you saw it was a year ago?
"A Yes, sir.
 "Q And your best recollection is that that statement is just the way you heard it a year ago?
"A Yes, sir.
"MR. GONAS: Thank you. That is all."
Immediately thereafter the State commenced the redirect examination of the witness which consisted exclusively of that part of the record quoted above that contained the question, the objection and the ruling of the court of which appellant now complains.
We find nothing in cross-examination of the witness that justifies the reference made to the matter of his silence, impliedly enforced by his lawyer, after he had made the statement taken by Lieutenant Pierce. In Houston v. State,supra, and in other analogous cases, the court sustained questions of defendant's counsel to the prosecutor's questions showing or implying silence, but held that unless the harm caused thereby was eradicated, appellant's conviction should not be allowed to stand. By the stronger reason, it should not stand when, as here, the objection of defendant was overruled.
We are not dealing here with a case in which the evidence was so strong, so conclusive, or nearly conclusive, as to defendant's guilt that it can be said that the error was without injury. Although we have held that a jury question was presented by the evidence, we are not convinced that the evidence of guilt was so strong as to preclude the possibility of a reasonable verdict finding the defendant not guilty. Especially is this true, when, according to Booker v. State,supra, and Gallman v. State, supra, we cannot consider as bearing on the question of his guilt of the crime charged, the defendant's possible guilt as an accomplice to the burglary.
We should also note some weakness in the evidence for the State as to the value of any personal property of the Spillers that defendant may have bought, received, concealed or aided in concealing. One item of such property, a medallion, was found in defendant's pocket, but there is no contention that it was worth as much as to be equal or above the demarkating value between grand and petit larceny. His possession at any time of any of the other items of property of the Spillers was weak as compared to his possession of the medallion. *Page 1257 
A third argument for error is as to the admission in evidence of items of personal property found in the automobile and on the person of some of the occupants that were not alleged in the indictment and were not the personal property of the Spillers. The issue between the parties on the particular point is not clearly drawn, and we deem it unnecessary and inadvisable to determine it at this time.
For the error indicated, the judgment of the trial court should be reversed and the cause remanded for a new trial.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.