LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction of robbery in the first degree and sentence to imprisonment for twenty-five years.
There is no contention that the evidence is not sufficient to sustain the verdict of the jury upon which the judgment of conviction was based, and we are of the opinion that there would be no merit to such a contention. Appellant submits two issues only, and we limit our discussion of the evidence to that part of it that has some bearing upon the issues presented.
The undisputed evidence shows that the alleged victim, a female, was shot at twice by a man with a pistol in his hand while he was standing by the side of her automobile demanding that she give him her purse and her money. The first shot hit her in the jaw, which required her immediate hospitalization. The second shot missed her. She was promptly taken to the hospital, and the robber even more promptly left the scene. At the hospital the same day she was injured, she described the robber to law enforcement personnel. During the first few days of her hospitalization, one of the officers brought her some pictures for her to view in order to determine whether there was in the collection of pictures a photograph of the robber. Her reply was in the negative until the fourth set of pictures was presented to her, in which she identified a photograph of the defendant as the man who had attempted to take her purse and money and who had shot at her twice. On the trial she positively identified the defendant as that person.
Another female was in the parking lot at the time of the commission of the crime, who confirmed the testimony of the victim as to what occurred, but she could not identify the defendant as the' robber.
The principal issue raised by appellant pertains to the following part of the transcript that occurred during the direct examination of Sergeant S. B. Waltman, a witness for the State, soon after he had testified as to his exhibition to the victim of the robbery of the four sets of pictures mentioned above:
“Q. You showed her this one without the cap?
“A. Yes.
“Q. With five other — four other people? “A. Yes.
“Q. Did you do anything more in the course of your investigation after you showed her all these pictures?
“A. I talked to Timmons and advised him of his rights and he refused to make any statement at all to me until he conferred with an attorney.
“MR. BERTOLOTTI: Now, Judge, I’m going to object.
“THE COURT: Overruled.
“MR. BERTOLOTTI: Under Doyle v. Ohio I think that that’s—
“THE COURT: Overruled.
“MR. BERTOLOTTI: Judge, I would like my objection for the record. I think that—
“THE COURT: It’s in the record.
“MR. BERTOLOTTI: All right, sir.
“Q. Did you do anything further in the extent of your investigation in this case?
“A. No.”
Appellant strongly relies upon Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), in support of his contention that reversible error was committed in permitting the State to show by the witness that defendant had refused to make a statement until he had conferred with an attorney, contending that prosecution may not use a defendant’s post-Miranda silence as evidence of his guilt. Appellee counters by *456 saying in effect that Doyle v. Ohio involved a situation in which the prosecution was attempting to impeach the defendant as to his testimony of an exculpatory nature. However, irrespective of the particular contention of appellee, it has been definitely decided in Alabama and elsewhere that the prosecution may not use the defendant’s silence as evidence of his guilt, whether in doing so it is in impeachment of him as a witness or not. Houston v. State, Ala.Cr.App., 354 So.2d 825 (1977), cert. denied, 354 So.2d 829; Ex parte Harris, Ala., 387 So.2d 868 (1980), rev’g Harris v. State, Ala.Cr.App., 387 So.2d 865 (1979). It suffices, we think, to quote clear and pertinent language from those two cases, which requires a reversal of the instant case.
In Houston v. State, per Judge Bowen, at 354 So.2d 827-828, it is stated:
“The principle forbidding the prosecution to use evidence of defendant’s post-arrest, post-Miranda warning silence for substantive purposes or as evidence of defendant’s guilt is soundly established and based on fundamental principles of our jurisprudence. In Miranda v. Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966) the Supreme Court of the United States announced in dictum that
“ ‘it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.’
“Though this issue has never been before the Supreme Court, lower federal courts have uniformly held that a defendant’s silence during police custody and interrogation cannot be admitted on the question of guilt. F. O’Keefe, ‘Impeachment by Silence,’ 25 Cleveland State Law Review, 261, 271, n. 65. See also Wigmore, Evidence § 821, n. 3 (J. Chadbourn rev. ed. 1970) for a listing of recent state cases which have considered the effect of Miranda on tacit admissions (silence) by the accused. On this issue it has been asserted that the court’s pronouncement in the Miranda dictum ‘leaves little doubt that silence or a claim of the privilege made in response to a police accusation during custodial interrogation is inadmissible.’ C. McCormick, Law of Evidence, § 161 (2 ed. 1972) Booton v. Hanauer, 541 F.2d 296, 298 (4th Cir. 1976). Generally see West Digest, both federal and state, under Criminal Law, Key No. 407(1).

“It is the opinion of this court that Doyle, supra, and the considerable body of case law both prior to and in the wake of Miranda give the force and effect of law to the Miranda dictum. Thus we hold that the use of the post-arrest, post-Miranda warning silence of the accused as evidence of his guilt is a violation of the Due Process Clauses of both the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901.... ”
In Ex parte Harris, supra, it was held that the trial court committed reversible error in permitting the prosecution to prove, over the objection of defendant, that defendant had remained silent in the presence of another person while such other person made an incriminatory statement relative to defendant. In so deciding, the Supreme Court of Alabama, through Justice Almon, relied upon Doyle v. Ohio, supra, and Miranda v. Arizona, supra, and summarized its conclusion on the point as follows:
“The crux of our holding is simply that it is fundamentally unfair and in violation of due process of law to inform a person under arrest that he has a right to remain silent and then permit an inference of guilt from that silence.” 387 So.2d at 871.
Appellee counts heavily on the fact that the testimony of the witness as to the silence of defendant upon his having been given the Miranda warning was not elicited by counsel for the State. It is commendable that the record does not show any effort on the part of counsel for the State to make *457 capital of the unfortunate statement by the witness. Nevertheless, this did not relieve the evidence of its highly prejudicial nature. It tended to hurt the defendant just as much as if it had been intentionally brought into the case by counsel for the prosecution. It was not so prejudicial as to have been eradicable. It could have been cured by prompt corrective action by the trial court. Houston v. State, supra. But the poison was neither removed nor ameliorated.
During the closing argument of counsel for the State, he said:
“Barbara Jackson [the eyewitness to the robbery, who could not identify defendant as the robber] said he was around— he was tall — not tall, excuse me. He was not tall. What is tall to you? Over six feet. He was somewhere around six feet, maybe a little bit more.”
The testimony of the witness on the subject was as follows:
“Q. How tall — did you give the police a general description of what you saw?
“A. Yes, I gave a description of the man.
“Q. What did you tell them?
“A. I told them that he was a thin— rather thin person, a black male, and he wasn’t a tall man, maybe a little taller than you. About your height or a little taller, I guess. But he was thin. He was not very tall and wasn’t a very heavy person.
“Q. How tall are you?
“A. I’m five-two.
“Q. What do you consider a not very tall person?
“A. Oh, I guess somebody that’s not quite six feet or maybe a little less than six.
“Q. And you told the police that?
“A. Yés, he was not six feet or over. I don’t think he was. He didn’t appear to be.
“MR. DEAN: Thank you.”
On close analysis, it appears that State’s counsel was somewhat, but slightly only, mistaken as to what the witness had said as to the height of the robber. It seems that her testimony was that the robber “was not six feet or over,” but that State’s counsel recounted her testimony as having been “he was somewhere around six feet, maybe a little bit more.” When counsel for the State made the argument as to what the witness had said as to the height of the robber, the following occurred:
“MR. BERTOLOTTI: I object. He’s mis-tating the evidence there, Judge.
“MR. DEAN: The jury will remember what she said.
“THE COURT: I’ll talk to them when he gets through.
“MR. BERTOLOTTI: All right, Judge.”
During further closing argument of State’s counsel, the following occurred:
“MR. DEAN: Put all the statements together when he asked Sgt. Waltman and then he comes to you and wants to nitpick and just take one out and say this is the one that’s going to make the whole case because everybody said five six and that’s not what the Sergeant told you, that’s not what he said — Three witnesses that he interviewed. He said they all basically said the same thing and we didn’t show all the witnesses in here today.
“MR. BERTOLOTTI: Now, Judge, I’ve got to object again. He is — you know, he is misstating the evidence pretty severely.
“THE COURT: I hate to admit it, I wasn’t even listening to it. Just tell them what the evidence is and let’s go.
“MR. DEAN: I am, Judge.
“THE COURT: All right, let’s go.”
The transcript does not purport to show any of the argument of defendant’s counsel or all of the argument of State’s counsel, nor does the transcript show any further reference by the court or by counsel to either of the items in the argument of counsel for the State to which an objection was made by counsel for the defendant. Although there was some inaccuracy as indicated in the argument of counsel for the State as to what one of the eyewitnesses had testified and as to what Sergeant Walt-man had testified, we are not persuaded *458 that error to the prejudice of the defendant resulted from the failure of the trial court to sustain the defendant’s objection to the argument or exclude it from the consideration of the jury.
In reaching this conclusion we are influenced to some extent by ambiguity in the testimony of the witnesses on the points under consideration, ambiguity in the argument of counsel for the State as to such testimony and by the failure of all concerned, the trial judge, counsel for the State and counsel for the defendant to have the matter clarified by references to the court reporter’s notes and thus informing the jury accurately as to the exact testimony of the witnesses. We are persuaded that counsel for the State was not intentionally attempting to mislead the jury and that probably it was not misled, that the jury recalled with accuracy what the witnesses had said. It was a short trial, the entire evidence constituting less than sixty transcript pages.
For the error indicated, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur, except DeCARLO, J., who dissents without opinion.