LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty under an indictment charging in pertinent part:
“Bernard Lewis ... did, possess a tool, instrument, or other article, to-wit: a set of bolt cutters, which is adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises, or theft by a physical taking, with the intent to use the same, in the commission of an offense involving forcible entry into premises or theft by a physical taking, in violation of § 13A-7-8 of the Code of Alabama.”
This appeal is from a judgment of conviction and sentence to imprisonment for two years.
We will condense our summary of the facts to that part of the evidence that has a bearing upon the single issue presented on appeal.
Police Officer Luther Latner testified that while he was patrolling in an automobile in a particular area of the city of Tuscaloosa at approximately 11:25 P.M. on May 19, 1982, the following occurred:
“I was heading west and I had just come from the Grant’s here and Mr. Quik. I had passed the 15th Avenue exit going that way, and I was heading west here. And when I got I don’t know how far inside before I got to 16th Avenue, I saw two black males coming kind of an angle. And they had another car over here. And when I saw them, they saw me and they ducked behind the car. (Indicating).
[[Image here]]
“When I saw the subjects there and they were behind the car, I went on past. The subjects got up and went across into the parking lot at Roger Manor Apartments.”
Officer Latner further testified that he drove around with the lights of his automobile out most of the time, arrived at the Roger Manor Apartments and walked up toward the laundromat and saw this appellant therein. He said he “could see two, kind of looked like tire tools sticking out of his shirt” and “could see the two bar parts up on top.” He further testified:
“I reached over, grabbed the two things that I saw sticking out of his shirt, and pulled them out and found out it was a set of bolt cutters, sir.
“Q. All right. Now, Officer Latner, did you place him under arrest at that time?
“A. Yes, sir, I did.
“Q. And did you put any cuffs on him or anything of that nature at that time?
“A. Yes, sir, I did.
“Q. Now, Officer Latner, after you apprehended Mr. Lewis, what, if anything, occurred at that time?
“A. After I had Mr. Lewis in custody and had him in handcuffs, another subject come out of the stairwell; come out between the apartments through that stair place; saw me and I saw him. I yelled for him to halt. I called him by name, but he did not and he run back through the stairwell, sir.
“Q. Did you recognize the individual when he stepped out?
“A. Yes, sir, I did.
“Q. And who was that individual?
*644 “A. The subject’s name was ‘Eric Hard-away.’ ”
According to the undisputed evidence, Eric Hardaway was never apprehended, although Officer Latner and other officers attempted to locate him.
According to further testimony of Officer Latner, after he had placed the appellant under arrest and had him to get in the officer’s automobile, then, Officer Latner informed the appellant of his constitutional rights, including his Miranda rights, and obtained a voluntary oral statement from the appellant, in which the appellant said that “he was walking home and that the bolt cutters belonged to a friend of his named ‘Eric’ and he was just holding the bolt cutters for him.”
According to the testimony of the defendant, just a few moments before he was arrested he saw Eric Hardaway, that Hard-away had a pair of bolt cutters in his back pocket and asked the defendant “would I hold them for him while he run across the street to Mr. Quik to get a pack of cigarettes.” The defendant testified in effect that his only occasion or reason for possessing the bolt cutters at the time was to comply with the request of Hardaway, and that he had no plans to use the cutters or to participate in their use. During the defendant’s testimony, he denied that he had signed the waiver of rights form, that Officer Latner had stated that the defendant had signed, and defendant denied that his purported signature thereon was his own signature. He further said that he did not “remember him [Officer Latner] reading me any rights at all.”
At the conclusion of the defendant’s testimony, the State called Officer Latner in rebuttal, and Officer Latner testified unequivocally that defendant did sign the waiver of rights form.
Appellant’s only insistance on a reversal is thus captioned in his brief:
“The trial court erred to reversal by overruling defense objection and by denying a defense motion for a mistrial where said objection and motion were made in response to the prosecutor’s questions regarding appellant’s election to remain silent after being advised of his constitutional right to do so.”
Appellant relies upon Houston v. State, Ala.Cr.App., 354 So.2d 825 (1977), cert. denied, 354 So.2d 829, Wilkinson v. State, Ala.Cr.App., 361 So.2d 400 (1978), cert. denied, 361 So.2d 405, and other cases for his insistence that the admission in evidence of post-arrest silence of an accused “violates the due process clauses of both Federal and State Constitutions” and that “his silence can be attributed to reliance on his Constitutional right.” The case sub judice, however, is not a case in which defendant chose to remain silent or in which there was any effort to show that he remained silent. There was complete harmony between what the defendant testified as to what he said and what Officer Latner testified that defendant said as to his reason for having the bolt cutters in his possession at the time he was observed and arrested by Officer Latner. The question asked Officer Latner by the State, the objection made by defendant, the ruling of the court, and the answer of Officer Latner are to be found in the following excerpt from the transcript during the redirect examination of Officer Latner:
“Q. Officer Latner, after you got him to sign that particular form, did you ask him whether or not he would give you a written statement?
“A. Yes, sir.
“MR. CORNWELL [Defendant’s Attorney]: Now, Your Honor, we are going to object to that.
“THE COURT: State your grounds.
“MR. CORNWELL: Whether or not Mr. Lewis has to make any statement?
“MR. LEMLEY [State’s Attorney]: No, we just—
“THE COURT: Read the question back, please.
“(Requested portion read.)
“THE COURT: Do you object to that?
“MR. CORNWELL: Sir?
“THE COURT: Do you object to that?
“MR. CORNWELL: Yes, sir.
*645 “THE COURT: State your grounds, please.
“MR. CORNWELL: I think it’s a comment on Mr. Lewis’ not making a statement at that time. When the officer has read him his constitutional rights and then to try to introduce testimony that he chose to remain silent after that, it’s clearly prejudicial and erroneous.
“THE COURT: The answer to that question would be yes or no. I overrule.
“Q. Did he make a—
“MR. LEMLEY: I’m sorry. Could you reread the question? I apologize. The specific question I asked.
“(Requested portion read.)
“Q. Did you ask him?
“A. Yes, sir, I asked him.
“Q. Now, prior to this time had he made an oral statement to you?
“A. Yes, sir, he had.
“Q. And then once you got to the statement, you filled out this explanation of rights form.
“A. Yes, sir, I did.
“Q. And the standard procedure to fill out that explanation of rights form before you take a written statement—
“A. Correct.
“MR. CORNWELL: We object to leading, Your Honor.
“THE COURT: Don’t lead him, please.
“MR. LEMLEY: I’m sorry.
“Q. What procedure do you follow before you take a written statement from the defendant?
“A. Make sure his rights have been read, get him to sign a rights paper saying he has read his rights and he understands them and that he’s giving the statement on his own free will, sir.
“MR. LEMLEY: No further questions.
“MR. CORNWELL: No further questions, Your Honor.”
We are unable to agree with contentions found in appellant’s brief that “State’s attorney rather than avoiding any reference to Mr. Lewis’ not giving a written statement, intentionally injected the matter of the Waiver Form to lead up to an obvious conclusion that Mr. Lewis refused to give the officer a written statement” and that the “State’s prosecutor intentionally violated” the rule stated in United States v. Wycoff, 545 F.2d 679 (9th Cir.1976), that “Counsel for the prosecution must scrupulously avoid all reference to or use of an accused’s assertion of his right to remain silent.”
We acknowledge our inability to understand fully the actions of all concerned in this case, but we are convinced that no error prejudicial to defendant was committed by the trial court as claimed by the only issue presented by appellant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.