TAYLOR, Judge.
The appellant, Wesley Mead, was indicted on two charges of attempted murder arising out of a shooting at his residence. The indictments were consolidated pursuant to A.R.Crim.P.Temp. 15.3. The jury convicted him of the lesser included offenses of second degree assault in one case, in which the appellant’s ex-wife was the victim, and first degree assault in the other case, in which her boyfriend was the victim. The trial judge set sentence at consecutive terms of five and twenty years, respectively, and ordered the appellant to pay restitution in the amount of $18,626, and court costs, and attorney fees in the amount of $1,000. Due to our decision in this appeal, only a few facts need to be stated.
On July 17, 1982, the appellant had his two children with him pursuant to his visitation rights. He had been drinking heavily all day, and his ex-wife arrived at his residence at 10:00 p.m. to pick up the children. Her boyfriend accompanied her. The appellant stated that he saw the boyfriend waiting in the car with a gun, and therefore, he went in the house to get his shotgun. The mother got the two children into the waiting car, and, as her boyfriend began to drive off, the shooting occurred. The ex-wife and her boyfriend were the victims. The police arrived later and arrested the appellant.
The appellant has raised nine issues; however, we have restricted our review to only one. The appellant contends that the trial court committed reversible error in allowing the prosecution to cross-examine him about his post-arrest silence. We agree.
The appellant’s direct examination raised the inference that he fired his shotgun in self-defense. The prosecutor then cross-examined the appellant regarding the latter’s failure to tell the police about the claim of self-defense:
“Q You didn’t say anything at that time about it being self-defense, to [the police officers] did you?
“MR. JOHNSON [Defense Counsel]: Judge, I am going to object to that. I think this is highly improper and I would like to say something outside the presence of the jury.”
A side bar conference occurred, during which the following was stated:
“MR. JOHNSON: Mr. Davis knows that at the time the police started questioning him, he told them that he refused to talk to them. He invoked his Fifth Amendment right and Mr. Davis knows that he has — knows that this is improper. It would be a comment on this man invoking his Fifth Amendment rights. Then Mr. Davis sits here and parades a series of questions about what he did not tell the police at that time. It is improper. We object to him going into it and would like an oral motion in limine requesting that the Court instruct him not to go into this any further.
“THE COURT: Well, I don’t think the fact that he invoked his right to remain silent — I am not going to preclude you from saying anything about self-defense. If you want to ask him—
“MR. DAVIS [District Attorney]: That is all I want to ask him.
“MR. JOHNSON: But I want the record to reflect and make an offer of proof at this time to show when they asked him anything about it, he refused to talk to him. And it is my contention at that time he had invoked his rights against self-incrimination. And any question about anything that was said to him any further is improper as a comment on his invoking of his rights to make a statement.
“THE COURT: You made the record.
“(Whereupon, the following was had and done in open court:)

*451 “Q Did you tell the police it was self-defense?
“MR. JOHNSON: Renew my objection.
“THE COURT: Overruled.
“MR. JOHNSON: I renew my objection again. And further object to the question as being improper—
“THE COURT: Overruled. Answer the question.
“THE WITNESS: No.”
Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.ES.2d 91 (1976), held that a prosecutor cannot impeach a defendant by cross-examining him about his post-arrest silence. The facts in that case involved a sale of narcotics to the defendants by an informer. At trial, the defendants claimed that they had been “framed,” and the prosecutor cross-examined each defendant, asking why each had not told the police the frameup story:
“Petitioners’ explanation of the events presented some difficulty for the prosecution, as it was not entirely implausible and there was little if any direct evidence to contradict it. As part of a wide-ranging cross-examination for impeachment purposes, and in an effort to undercut the explanation, the prosecutor asked each petitioner at his respective trial why he had not told the frameup story to Agent Beamer when he arrested petitioners.” 426 U.S. at 613, 96 S.Ct. at 2242.
The Court recognized the dilemma.
“The State pleads necessity as justification for the prosecutor’s action in these eases. It argues that the discrepancy between an exculpatory story at trial and silence at time of arrest gives rise to an inference that the story was fabricated somewhere along the way, perhaps to fit within the seams of the State’s case as it was developed at pretrial hearings. Noting that the prosecution usually has little else with which to counter such an exculpatory story, the State seeks only the right to cross-examine a defendant as to post-arrest silence for the limited purpose of impeachment. In support of its position the State emphasizes the importance of cross-examination in general [citations omitted], and relies upon those eases in which this Court has permitted use for impeachment purposes of post-arrest statements that were inadmissible as evidence of guilt because of an officer's failure to follow Miranda’s dictates. [Citations omitted.] Thus, although the State does not suggest petitioners’ silence could be used as evidence of guilt, it contends that the need to present to the jury all information relevant to the truth of petitioners’ exculpatory story fully justifies the cross-examination that is at issue.
“Despite the importance of cross-examination,[7] we have concluded that the Miranda decision compels rejection of the State’s position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights [citation omitted], require that a person taken into custody be advised immediately that he had the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee’s exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. [Citation omitted.] Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.
*452 426 U.S. at 616-618, 96 S.Ct. at 2243-2245 [Emphasis added.]
It should be noted, however, that as with every rule, there are exceptions:
“We hold that the use for impeachment purposes of petitioners’ silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment.[11]
This court previously applied the ruling in Doyle, supra, in Houston v. State, 354 So.2d 825 (Ala.Cr.App.1977), cert, denied, 354 So.2d 829 (Ala.1978).
“It is the opinion of this court that Doyle, supra, and the considerable body of case law both prior to and in the wake of Miranda give the force and effect of law to the Miranda dictum. Thus we hold that the use of the post-arrest, post-Miranda warning silence of the accused as evidence of his guilt is a violation of the Due Process Clauses of both the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901. An accused has the constitutional right to remain silent following arrest and where the accused remains silent, his silence can be attributed to reliance on this right. That silence may not be used to support an inference that his trial testimony is a later fabrication.” 354 So.2d at 828.
The State relies in its brief on Chapman v. United States, 547 F.2d 1240 (5th Cir. 1977), for the proposition that where the appellant’s exculpatory story is transparently frivolous and where the evidence of guilt is otherwise overwhelming, the error is rendered harmless. The “exculpatory story” about which the appellant was cross-examined was self defense. The man whom the appellant shot admitted that he had removed his pistol from the car console and was lifting it “up like this to the [car] door, even with the door, then I was shot.” (R. 51) The appellant claimed the pistol was out of the window pointing at him when he shot the man. Such testimony clearly fails to meet the “transparently frivolous” exception stated in Chapman, supra. .
We, therefore, reverse and remand for a new trial, and pretermit the other issues raised by the appellant.
REVERSED AND REMANDED.
All the Judges concur.

"7 We recognize, of course, that unless prosecutors are allowed wide leeway in the scope of impeachment cross-examination some defendants would be able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge. See generally Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 948, 44 L.Ed. 1078 (1900).”

"11 It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. Cf. United States v. Fairchild, 505 F.2d 1378, 1383 (CA5 1975).” 426 U.S. at 619-620, 96 S.Ct. at 2245-2246.