Ricky Mixon was indicted for the offense of murder, in violation of § 13A-6-2, Code of Alabama 1975. The jury found Mixon guilty as charged in the indictment, and he was sentenced to life imprisonment.
Mixon contends that it was reversible error for the prosecutor to use Mixon's post-arrest, post-Miranda silence: 1) to impeach Mixon's testimony at trial; 2) to argue that Mixon was dishonest; 3) to argue that Mixon's silence implied guilt; and 4) to argue that Mixon had a duty to disclose exculpatory information to guide the police investigation. We agree.
"Not only is the prosecutor forbidden to use as evidence of substantive guilt the fact of defendant's silence following his arrest and Miranda warnings but the state may not constitutionally impeach a defendant's trial testimony with proof of post-arrest silence." Houston v. State, *Page 606 354 So.2d 825, 828 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 829
(Ala. 1978).
In this murder trial, Mixon defended on the ground that the victim, Alvena Sherrod, had pulled a gun on him during an argument and that a struggle had ensued with the victim holding the gun and Mixon holding his hand over the victim's hand and part of the gun when the gun fired. Mixon made several statements to the victim's family and pre-Miranda statements to the police that he had shot the victim during an argument but that the shooting was accidental.
Although the State had the gun and used it for ballistics tests, no fingerprints were taken from the gun and no tests for powder residue on the victim's right hand were requested or made.
At trial, the prosecution attempted on two separate occasions to introduce testimony that after Mixon had received hisMiranda warnings and had had counsel present, he refused to speak to police. On both occasions, the court sustained Mixon's objections on constitutional grounds but failed to instruct the jury on its rulings.
In closing, however, prosecutor Pep Johnston argued:
 "You've all seen enough television to know that one of the things police officers need to do is give a man his rights. You've heard that on TV. What that means is that you advise the suspect that he does not have to talk if he doesn't want to. He can have a lawyer if he wants to. He doesn't have to say anything.
 "Now, police officers have to do that before they can question them if the man is a suspect. They can ask what happened —
"MR. HARMON: Your Honor, may we approach?
"MR. JOHNSTON: — and did so in this case.
"MR. HARMON: May we approach a moment?
 "(The following proceedings were had at the bench by Court and counsel out of the hearing of the jury:)
 "MR. HARMON: This comment on Miranda rights is precisely the evidence that you said could not go in. He can talk —
 "THE COURT: I did not allow the sheriff to testify because it was undisputed that — You have been arguing all during this trial — you've made three or four comments about some constitutional rights. That's only if he doesn't testify. He's testified in this case, so there can be no comment.
 "MR. HARMON: Your Honor, for the record, then, I object to this, one, the evidence that he had tried to present earlier was the statement where he refused — a signed statement where he refused to make a statement, the Miranda rights. We object on all unfair commentary.
 "THE COURT: Where do you get that objection, unfair commentary? I've never heard of that. That is not a legal theory. It would only be if he failed to testify. He's testified in this case, so what you're talking about is a moot question. I didn't allow the sheriff to testify merely because it was already established [that] they had attempted to take a statement from him [that] he had refused to give.
 "MR. HARMON: That was yesterday, Your Honor. This was not — the sheriff today. We're talking about yesterday when he tried to bring the statement in talking about the —
"MR. MOORE: He kept it out.
 "THE COURT: I didn't keep it out. He withdrew it.
 "(The following proceedings continued within the hearing of the jury:)
 "MR. JOHNSTON: As soon as a police officer is aware that the individual to whom they are speaking is a possible suspect, then they must advise him that he has a right not to talk. And of course that's what they did. You heard Officer Heritage say that, that he did that. All right.
 "There has been a lot of argument that we did not do fingerprint — the State did not do fingerprint testing for *Page 607 
this gun, you see. Now, at the time the investigation was initiated, the information available to the police was that this Defendant said, 'I shot her.' There was no contention by anyone and certainly not the Defendant that anyone other than himself had his hands on this gun. As far as anybody knew, the argument that she shot herself or had her hands on this gun was not raised. The police officers are thorough. They investigate what they know to investigate, but they're not mind-readers. They're not mind-readers.
 "It seems to me this makes sense. Anybody in a situation where they are accused of killing someone who knows — who knows for a fact that the person they [are] accused of killing actually had the gun him or herself, ought to say so if that's what they're going to try to prove, you know, if that's their defense, if that's what they want to say to us, to the police, to the jury, to the judge. If they want to say that, why hide it for five or six months —
"MR. HARMON: Your Honor —
"MR. JOHNSTON: — and destroy the opportunity?
 "MR. HARMON: He's just testified — he's just spoken about the constitutional right to remain silent and now he's commenting on the right to remain silent, not testimony today. And that is unfair commentary and we move —
"THE COURT: Overruled.
 "MR. JOHNSTON: Why hide it for all that time? You come up here and argue to you ladies and gentlemen, they didn't look for her fingerprints, you know. Why didn't they look for Jackie's fingerprints? He could come up here and say, if he wanted to, that Miss Sherrod had the gun, you know. We didn't know that. The police didn't know that.
 "He could have said that. He could get up here and argue, you didn't check Miss Sherrod's fingerprints. You didn't check her Daddy's fingerprints. You didn't check her boyfriend's fingerprints. You [didn't] do this. You didn't do that. Waits all this time and gets up in court and says, 'Alvena shot herself.' You know, if he wants to defend — if he wants to be completely open and honest in his defense, he's at least obligated to tell the police what happened if he wants to use that in his defense. He hadn't been arrested.
 "They put a lot of emphasis on he hadn't been arrested. Certainly he hadn't been arrested. They didn't know what happened. They arrest somebody when they figure out what happen[ed]. Even the fact that he said he shot her, they didn't arrest him on that. They asked him to come back over here, you know. Let's sort this thing out. Let's see if we can get together and figure out what happened.
 "Now they come in and say, well, you should have checked for fingerprints for Alvena because she shot herself. It makes a lot of sense from his standpoint, but is a dishonest defense on the part of the Defendant, not his lawyers. Now understand me, I'm not implying that they did anything wrong. They did a good job. They represent their client. I respect both of them, but this Defendant was under a duty to disclose, in my opinion, something that would help his own defense if he had one.
". . . .
 "Now, don't you know any reasonable man sitting down there in the jail who's charged by that time with murder on a warrant that Monday — Don't you know if he thinks that the woman shot herself, he's going to say so? He's going to say, 'Listen, that gun has got her fingerprints on it. Check that.'
"Counsel for the prosecution must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent." Houston v. State, supra, 354 So.2d at 828. The prosecutor in the case sub judice certainly did not avoid reference *Page 608 
to and use of Mixon's silence. He used that silence to argue 1) that Mixon's trial testimony following post-arrest silence was untrustworthy; 2) that Mixon's silence in and of itself indicated that he was guilty; and 3) that Mixon had a duty to disclose exculpatory information to guide the police investigation.
Although the prosecution in advancing these arguments clearly violated the due process clauses of the Fourteenth Amendment to the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901, we must nevertheless determine whether this error was "harmless." To establish harmless error in this context, the State should prove 1) that the evidence of Mixon's guilt was overwhelming and that his defense was transparently frivolous; 2) that the prosecution made only a single reference to Mixon's silence and this reference was neither repeated nor linked with Mixon's exculpatory testimony; and 3) that the trial court properly instructed the jury upon sustaining the defense's objections. Houston v. State, supra,354 So.2d at 829 (citing Chapman v. United States,547 F.2d 1240, 1250 (5th Cir.), cert. denied, 431 U.S. 908,97 S.Ct. 1705, 52 L.Ed.2d 393 (1977) and Adkins v. State, 265 Ala. 666,93 So.2d 522 (1957)). The State has proven none of the above elements.
Because Mixon's testimony was consistent with the autopsy report, which indicated that the bullet travelled on an upward path to the victim's eyelid and brain, it cannot be said that Mixon's defense was transparently frivolous. The autopsy, moreover, disclosed a bruise on the back of the victim's right hand that could not have occurred after death and that was consistent with her hand being grabbed and pressed during a struggle. The absence of fingerprints or powder residue, evidence which could have disproved the testimony were it a fabrication, is a glaring omission. Finally, all of Mixon's pre-Miranda statements to the police and to others indicated that he shot the victim but that it was an accident, which statements are consistent with the self defense defense. SeeMead v. State, 472 So.2d 449 (Ala.Cr.App. 1985) (self-defense claim not transparently frivolous).
The prosecutor, moreover, repeatedly referred to Mixon's silence in closing argument as a direct attack on Mixon's exculpatory testimony at trial. Finally, the trial court failed to properly instruct the jury because it overruled Mixon's objections to the prosecution's repeated references to his silence in closing argument, which erroneous ruling in and of itself requires reversal. Craig v. State, 375 So.2d 1252, 1256
(Ala.Cr.App.), cert. denied, 375 So.2d 1257 (Ala. 1979).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the Court.
The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.