For the reasons expressed in the main opinion and in Judge Shaw's special writing, I agree that Mixon v. State,596 So.2d 605 (Ala.Crim.App. 1991), should be overruled insofar as it establishes a three-pronged test to be used in every case in conducting a harmless-error analysis of a Doyle violation. Nevertheless, I believe that the three criteria set forth inMixon still provide a guideline for discerning whether the error was harmless. Thus, for the reasons set forth below I believe that the violation of Kenneth Qualls's right to remain silent was not harmless error. Therefore, I must respectfully dissent from the majority opinion affirming Kenneth Qualls's conviction.
The facts at trial were disputed. The victim testified that she and Qualls had had a child together and that she had three other children. She testified that, late one night in January 2003, Qualls entered her home uninvited. The victim testified that an argument ensued and that Qualls physically abused her, threatened to kill her, and stabbed her in the neck with a knife. The victim testified that she grabbed the blade of the knife and cut her hand. The victim testified that she convinced Qualls to stop the assault. The victim testified that Qualls took their son and walked frantically around the house, waving the knife. The victim testified that, eventually, the baby was put down to sleep, and Qualls laid down to sleep, asking the victim to join him; however, she was in pain and instead began to seek help. She testified that she tried to call her brother, Qualls's sister's husband, and the police, to no avail. She testified that, shortly thereafter, she saw Officer Zeke Walker pass her home in his vehicle and signaled to him by flipping the porch light on and off. *Page 858 
Qualls's version of the facts up until that point was very different. He testified that the victim called him on the night in question and told him that their baby was sick. He testified that he arrived at the victim's house at approximately 10:30 with medicine for the baby and knocked on the door, although he had a key. Qualls testified that he noticed that the victim's hand was wrapped in a dishrag and that she claimed to have injured it while attempting to open a can of formula for the baby. He testified to the deplorable condition of the victim's home — terrible odor of "[p]ure `ole manure" (R. 441), dirty dishes and dishwater in the sink, rotten food, and dirty clothes with "fecal stains" covering the floor. (R. 442.) He testified that the house was cold and that the baby was wearing a "soaking wet" diaper and was lying in the crib with only a sheet. (R. 442.) He testified that the victim claimed to have been "out of everything" and was "tired of doing everything [her]self," although Qualls regularly paid her child support. (R. 442.) Qualls testified that a verbal argument ensued concerning the state of the house and the condition of their child. Qualls testified that he then fed the baby, medicated him, wrapped him up, and put him to bed. Qualls, too, went to sleep.
There is no dispute that Qualls was awakened as he was arrested and handcuffed, placed in a patrol car wearing only his underwear, and that the temperature at the time of the arrest was approximately 15 degrees Fahrenheit. An officer testified that although Qualls did not have his pants on, the car was running, heated, and the windows were closed when Qualls was placed in the car. Qualls testified that "it was so cold. It was in the teens that night" (R. 445-46), and that "[i]t sure was cold inside the car." (R. 488.) He stated that he had begged for his pants, but the officers had refused them. He testified that he thought the officers were "going to let me freeze out there" (R. 486) and that he was "about to freeze" and that "the window was halfway down in the backseat," so he squeezed through the open window and went to his neighbor's house. (R. 486). Qualls stated that he would not "call it escape. I just like to have froze." (R. 487.) Qualls testified that he knocked at the neighbor's door, but nobody came to the door. He then saw deputies apparently looking for him, and he turned himself in. One officer testified that "we found him down the road in a wooded area coming from behind a trailer that was not too far from the house." (R. 53.)
Qualls raises only one issue on appeal. He argues that the trial court erred by allowing the admission of testimony that indicated that Qualls had chosen to remain silent after having been Mirandized.[1] In particular, Qualls takes issue with the following two exchanges:
 "[Prosecutor]: And when you talked to the deputies or the police, they gave you an opportunity to make a statement, didn't they?
 "[Qualls]: Yes, sir — No, sir they didn't. They never did. I never did make a statement.
 "[Defense counsel]: Judge, I object and move for a mistrial. I would like to approach the Bench.
 "THE COURT: Ladies and gentlemen, if y'all would, go on and take a break. Keep in mind the recess instruction.
 "(Whereupon the jury left the courtroom, and the following proceedings were had outside the presence of the jury:) *Page 859 
"THE COURT: [Defense counsel], go ahead.
 "[Defense counsel]: Judge, I believe the [r]ecord reflects — [the prosecutor] has impermissibly raised the issue of him having an opportunity to make a statement. This is in front of the jury, and the answer elicited was, no, sir, I didn't make a statement. This is in front of the jury, and the answer elicited was, no, sir, I didn't make a statement. And at that point in time I moved for a mistrial.
 "The issue was raised by the State, and in the law that I've read, that's reversible error. I have no idea why he brought that up. I have no exception to the Fifth Amendment that you can comment in front of the jury [regarding] the defendant's refusal to give a statement.
"THE COURT: [Prosecutor].
 "[Prosecutor]: Judge, when he took the stand, his rights to the Fifth Amendment evaporated. And he is subject to cross-examination on a statement that he is making live from the witness stand when he's never made a statement prior to this date that could have either helped his position or the state would have known what his testimony was going [to] be.
 "Once he testifies, his right to either make a statement or — not make a statement is gone. He's taken the stand. That Fifth Amendment right is gone. And I have a right to ask him did the officers read him his rights and give him an opportunity to make a statement. And if he refused to make a statement, then he has perfect rights to refuse to make a statement, but the jury is also entitled to hear when he is here on the stand saying something totally contrary as to what would appear to be the basis of this case. Even to the point of saying that he didn't have the knife in his pocket and did not have the drugs in his pocket.
 "But, Judge, you can give him a mistrial if you choose to `cause I'll know what he is going to say next time around and all of these other folks [sic].
 "[Defense counsel]: Judge, the law clearly does not allow in this country and in this state the prosecution to remotely mention the fact that the defendant was given an opportunity to make a statement and did not make it. And that is an impermissible comment on his invoking the Fifth Amendment rights. That's him suggesting to the jury that they should infer something from that, which is the very instruction that you give to the jury that they cannot do.[2]
 "I think we have reversible error and I hate it. I just hate it. But I don't know of any way to cure it.
"THE COURT: Anything else?
"[Defense counsel]: That's it.
"[Prosecutor]: No, sir.
"THE COURT: Mistrial is denied.
 "[Defense counsel]: Can I have a motion in limine from this point forward to the state having any witnesses giving any answers with regards to his failure or refusal to give a statement and waiving his Fifth Amendment rights prior to trial?
"Can I have a motion in limine on that?
 "[Prosecutor]: Judge, he is not entitled to an objection being sustained or a motion in limine.
 "Once he takes the stand, he gives up that Fifth Amendment right. He could have stayed over here in this chair, and I could not have made any comment about his failure to testify today or his *Page 860 
failure to give anybody a prior statement so we would know what he was going to say once he got on the witness stand.
 "He had that right, but he gave that right up when he took the witness stand. Of course, the state does intend to ask other people questions about him having been given a right to make a statement and him not doing so.
 "THE COURT: Motion in limine is denied. Anything else?
 "[Defense counsel]: I would ask the Court to put the same burden on the State that's been put on the defendant in this case, and that is for him making an objection to show [or] produce the law. I was required to do that but the State has not been required to do that.
"THE COURT: When were you required to do that?
 "[Defense counsel]: Yesterday. I had an objection on the admissibility of evidence, and the Court wanted me to produce the law on that. And there were several other instances.
 "THE COURT: I know I asked you both to give me law on the proximity to the accused, and neither one of you did that.
"[Short recess. Bench Conference continued.]
 "[Defense counsel]: Judge, there is a chance that the Court of Criminal Appeals at this point in time won't consider this reversible error — I'm not trying to sound like a know-it-all, but I do think if you give us a motion in limine from this point forward with the State being directed not to comment on his refusal to give a statement prior to today, then it may not — it may be harmless error.
 "THE COURT: [Defense counsel], do you think that the prosecution is limited now that he has taken the stand to not be able to ask him when is the first time you decided to tell somebody your side of the story; when was the first time you decided to tell somebody that she cut herself; or whatever his story is going to be? I don't know yet, but you don't think the [district attorney] is entitled to go into that?
 "[Defense counsel]: I think very carefully in that area the prosecution can frame its questions very carefully and maybe sneak by the Fifth Amendment rights and infringing on the Fifth Amendment rights, but, no, sir, I know for a fact that the State cannot bring up to the jury that the defendant did not waive his Fifth Amendment rights and give a statement. I know for a fact that that's a law.
 "THE COURT: And you say that remains so even when he comes to the trial and testifies?
 "[Defense counsel]: That remains so. And the reason for that is it would place a chilling effect if everyone who decided to invoke his Fifth Amendment rights at that point in time and wanted an attorney — it would be a chilling effect on their right to take the stand and testify because they knew it would come in. And conversely, if the person who did not waive his Fifth Amendment rights — you could argue that the reason he waived them is because he wanted to testify at trial. One has nothing to do with the other. You cannot comment on the defendant['s] refusing to give a statement even if he gets on the stand.
"THE COURT: Anything else?
"[Defense counsel]: No, sir."[3] *Page 861 
(462-469.) (Emphasis added.) Later, on rebuttal, the prosecutor questioned Deputy Lewis Murray as follows:
 "[Prosecutor]: Did you give Ken Qualls an opportunity to make a statement?
"[Defense counsel]: Object.
"[Witness]: Ask that again.
"[Prosecutor]: Did you read Mr. Qualls his rights?
"[Defense counsel]: Object.
"[Witness]: Yes, I did.
"[Prosecutor]: Did he make a statement?
"[Defense counsel]: Object and move for a mistrial.
"THE COURT: Same ruling.
"[Witness]: No, he didn't."
(R. 517-18.)
 "The principle forbidding the prosecution to use evidence of defendant's post-arrest, post-Miranda
warning silence for substantive purposes or as evidence of defendant's guilt is soundly established and based on fundamental principles of our jurisprudence. In Miranda v. Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694
(1966) the Supreme Court of the United States announced in dictum that
 "`it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.'
 "Though this issue has never been before the Supreme Court, lower federal courts have uniformly held that a defendant's silence during police custody and interrogation cannot be admitted on the question of guilt. F. O'Keefe, `Impeachment By Silence,' 25 Cleveland State Law Review 261, 271, n. 65. See also Wigmore, Evidence § 821, n. 3 (J. Chadbourn rev. ed. 1970) for a listing of recent state cases which have considered the effect of Miranda on tacit admissions (silence) by the accused. On this issue it has been asserted that the court's pronouncement in the Miranda dictum `leaves little doubt that silence or a claim of the privilege made in response to a police accusation during custodial interrogation is inadmissible.' C. McCormick, Law of Evidence § 161 (2d ed. 1972); Booton v. Hanauer, 541 F.2d 296, 298
(4th[1st] Cir. 1976). Generally see West Digest, both federal and state, under Criminal Law, Key Number 407(1).
 "Not only is the prosecutor forbidden to use as evidence of substantive guilt the fact of defendant's silence following his arrest and Miranda warnings but the state may not constitutionally impeach a defendant's trial testimony with proof of post-arrest silence. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976).
 "`Silence in the wake of these warnings may be nothing more than the *Page 862 
arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, 422 U.S. [171] at 177, 95 S.Ct. [2133], at 2137 [45 L.Ed.2d 99 (1975)]. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. Mr. Justice White, concurring in the judgment in United States v. Hale, 422 U.S., at 182-183, 95 S.Ct., at 2139, put it very well:
 "`". . . when a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . . Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from Miranda warnings that this would not be the case."' Doyle, supra, 96 S.Ct. [at] 2244."
Houston v. State, 354 So.2d 825, 827-28 (Ala.Crim.App. 1977). In Houston, the Court concluded, in part:
 "It is the opinion of this court that Doyle, supra, and the considerable body of case law both prior to and in the wake of Miranda give the force and effect of law to the Miranda dictum. Thus we hold that the use of the post-arrest, post-Miranda
warning silence of the accused as evidence of his guilt is a violation of the Due Process Clauses of both the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901. An accused has the constitutional right to remain silent following arrest and where the accused remains silent, his silence can be attributed to reliance on this right. That silence may not be used to support an inference that his trial testimony is a later fabrication. People v. McClure, 42 Ill.App.3d 952, 1 Ill.Dec. 617, 356 N.E.2d 899 (1976); United States v. Moore, 484 F.2d 1284 ([1st] Cir. 1973). Counsel for the prosecution must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent. United States v. Wycoff, 545 F.2d 679, 682 (C.A.Cal. 1976)."
354 So.2d at 828.
In Whitehead v. State, 777 So.2d 781 (Ala.Crim.App. 1999), aff'd, 777 So.2d 854 (Ala. 2000), the Court noted that the United States Supreme Court had since clarified Doyle:
 "`In Greer v. Miller, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the United States Supreme Court "clarified that `the holding of Doyle is that the Due Process Clause bars "the use for impeachment purposes" of a defendant's postarrest silence.'" United States v. Stubbs, 944 F.2d 828, 834 (11th Cir. 1991), quoting Greer, 483 U.S. at 763, *Page 863 107 S.Ct. at 3108, in turn quoting Doyle, 426 U.S. at 619, 96 S.Ct. at 2245. Furthermore, "while a single comment alone may sometimes constitute a Doyle violation, the Supreme Court's opinion in Greer makes clear that a single mention does not automatically suffice to violate defendant's rights when the government does not specifically and expressly attempt to use — as was attempted in Doyle and Greer — the improper comment to impeach the defendant. See Lindgren v. Lane, 925 F.2d 198, 201 (7th Cir. 1991)." Stubbs, 944 F.2d at 835. (Emphasis in original.) In Lindgren, supra, the United States Court of Appeals for the Seventh Circuit found as follows: "At trial the prosecutor never called attention to the petitioner's silence. The defendant simply responded that he didn't `wish to say any more' at the tail end of a compound answer to a question by the police officer. Consequently, no Doyle violation occurred." 925 F.2d at 201. See also Mathenia v. Delo, 975 F.2d 444, 452 (8th Cir. 1992), cert. denied, 507 U.S. 995, 113 S.Ct. 1609, 123 L.Ed.2d 170 (1993) (testimony by officer that defendant did not make a statement to him at the time of his arrest not a comment on defendant's post-arrest silence because the testimony was "`merely preliminary to the admission into evidence of [Mathenia's] videotaped statement'"); Rowan v. Owens, 752 F.2d 1186, 1190 (7th Cir. 1984), cert. denied, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 691
(1986) (testimony by officers that defendant stated "he didn't want to say anything else" at conclusion of interrogation not a comment on defendant's post-arrest silence because it simply indicated the end of the interrogation and the testimony was not emphasized so "as to invite the jury to infer that [the defendant] had decided to `clam up' after realizing he was incriminating himself").'"
777 So.2d at 823, quoting Wilkerson v. State, 686 So.2d 1266,1272-73 (Ala.Crim.App. 1996). In Whitehead, the Court held that there was no error in allowing the comment in question:
 "`Our review of the record reveals that the comment by Officer Wilkinson to which the appellant objects was never mentioned or alluded to again at trial by the prosecutor. The statement was not specifically elicited by the prosecutor and appears to be nothing more than part of Officer Wilkinson's narrative of the events leading to the making of the appellant's third taped statement. Clearly, the comment did not constitute an improper comment on the appellant's post-arrest silence for purposes of Doyle.'"
777 So.2d at 823, quoting Wilkerson, 686 So.2d at 1273.
As can be gleaned from the portion of the trial transcript quoted above, the testimony in this case was not a single incident and was elicited by the prosecution for the express purpose of pointing out that Qualls was given an opportunity to make a statement, but that he did not do so. This was clearly in error.
Such an error may be held to be harmless on appeal. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24,87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The three-pronged test set forth in Mixon, which this Court now overrules insofar as it purports to be the test to be used in every case considering whether a violation of a defendant's right to remain silent was harmless error, nevertheless remains a useful and pertinent consideration in such an evaluation, and it is particularly useful *Page 864 
in this case. The Court in Mixon found that proof of the following was necessary to find harmless error.
 "1) [T]hat the evidence of [appellant]'s guilt was overwhelming and that his defense was transparently frivolous; 2) that the prosecution made only a single reference to [appellant]'s silence and this reference was neither repeated nor linked with [appellant]'s exculpatory testimony; and 3) that the trial court properly instructed the jury upon sustaining the defense's objections."
Mixon v. State, 596 So.2d at 608, citing Houston v. State,354 So.2d at 829, Chapman v. United States, 547 F.2d 1240, 1250
(5th Cir.), cert. denied, 431 U.S. 908, 97 S.Ct. 1705,52 L.Ed.2d 393 (1977), and Adkins v. State, 265 Ala. 666, 93 So.2d 522
(1957). See also Houston v. State, 354 So.2d at 828 ("A comment on or evidence of the post-arrest silence of the defendant or his refusal to give a statement may not be ineradicable and may be cured by prompt corrective action by the trial court. Jones v.Wyrick, 542 F.2d 1013 (C.A.Mo. 1976); [People v. McClure,42 Ill.App.3d 952, 1 Ill.Dec. 617, 356 N.E.2d 899 (1976)].").
In Mixon, we held the error to be reversible, noting:
 "Because Mixon's testimony was consistent with the autopsy report, which indicated that the bullet traveled on an upward path to the victim's eyelid and brain, it cannot be said that Mixon's defense was transparently frivolous. The autopsy, moreover, disclosed a bruise on the back of the victim's right hand that could not have occurred after death and that was consistent with her hand being grabbed and pressed during a struggle. The absence of fingerprints or powder residue, evidence which could have disproved the testimony were it a fabrication, is a glaring omission. Finally, all of Mixon's pre-Miranda statements to the police and to others indicated that he shot the victim but that it was an accident, which statements are consistent with the self defense defense. See Mead v. State, 472 So.2d 449 (Ala.Cr.App. 1985) (self-defense claim not transparently frivolous).
 "The prosecutor, moreover, repeatedly referred to Mixon's silence in closing argument as a direct attack on Mixon's exculpatory testimony at trial. Finally, the trial court failed to properly instruct the jury because it overruled Mixon's objections to the prosecution's repeated references to his silence in closing argument, which erroneous ruling in and of itself requires reversal. Craig v. State, 375 So.2d 1252, 1256 (Ala.Cr.App.), cert. denied, 375 So.2d 1257 (Ala. 1979)."
596 So.2d at 608. See also Harris v. State, 611 So.2d 1159,1161 (Ala.Crim.App. 1992) (holding that error in the admission of testimony regarding appellant's post-Miranda silence could not be harmless because "[t]he jury heard the testimony, and no curative instruction was given to it").
Here, Qualls presented a defense based on duress, argued in closing that his escape was an action born of duress, and he received a jury instruction on duress. "It is a defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by the threat of imminent death or serious physical injury to himself or another." § 13A-3-30(a), Ala. Code 1975. "`When evidence regarding alleged duress is in dispute, a question of fact is presented for the jury.' Trammellv. Disciplinary Board of the Alabama State Bar, 431 So.2d 1168,1171 (Ala. 1983); Ellison v. State, 373 So.2d 1247, 1249
(Ala.Cr.App. 1979). The issue of duress usually presents a jury question. La-Bryer v. State, 45 Ala.App. 33, 36, 222 So.2d 361, cert. denied, 284 Ala. 732, *Page 865 222 So.2d 366 (1969)." Sanders v. State, 512 So.2d 809, 811
(Ala.Crim.App. 1987). Because there was testimony that the temperature was 15 degrees when Qualls was placed in an unheated police car wearing only his underwear, I cannot conclude that even though he admitted his escape, his defense was transparently frivolous.
I agree that the first part of the testimony in question, and certainly Qualls's statement that he "never did make a statement" was unresponsive to the prosecutor's asking him whether law-enforcement officers had given him "an opportunity to make a statement." (463, 462.) The first part of his answer, "No, sir, they didn't," would have sufficed. (R. 462.) The State did not necessarily elicit this information from Qualls; rather, he volunteered it. See Connolly v. State, 539 So.2d 436, 439
(Ala.Crim.App. 1988) (in finding harmless error where the trial court sustained the objection and gave a curative instruction to the jury, the Court relied on the fact that the comment was not elicited by the State and "was unresponsive and `volunteered' by the witness," and on the fact that the comment was part of a "legitimate narration" regarding the investigation). However, unlike in Connolly, the trial court did not sustain Qualls's objection, and the trial court did not issue a curative instruction to the jury. See Harris v. State, 611 So.2d at 1160
(holding that, in a case where the objection to the post-Miranda silence testimony was overruled and a curative instruction was not given to jury, "[i]t is irrelevant that the testimony concerning the appellant's silence was not elicited by the prosecution").
I am disturbed that this is not a case where there was only one mention of the fact that Qualls did not make a post-Miranda
statement; the prosecution purposefully elicited the very same information a second time when questioning Deputy Murray. We also note that the record does not indicate that Deputy Murray's response was part of a legitimate narrative concerning how the investigation was conducted; rather, he had already testified and was called during the State's rebuttal when this testimony was elicited by the State. The details surrounding the events of the night in question, including the arrest and the investigation, had already been well-established through other testimony. Finally, Qualls's second motion for a mistrial on these grounds was denied, and the trial court did not issue a curative instruction to the jury.
In conclusion, the majority relies on Qualls's overwhelming guilt as the sole factor to consider in the harmless error analysis. I believe that such a gross violation of Qualls's right to remain silent requires more consideration. Thus, in light of the fact that no objection was sustained, no curative instruction was given to the jury, and the prosecution repeatedly andintentionally elicited improper testimony, and Qualls put forth a plausible defense, I cannot say beyond a reasonable doubt that the error in this case is harmless.
Additionally, I would find the error here to be harmful based on the analysis in Houston alone. In Houston we stated:
 "On four separate occasions throughout the course of the trial reference was made to the fact of the defendant's silence. Only on one of these occasions did the trial judge sustain defense counsel's objection and instruct the jury. Had the trial court sustained the objections, instead of overruling, and admonished the jury that the argument was improper, the prosecutor's comments would not have constituted reversible error. Adkins v. State, 265 Ala. 666, 93 So.2d 522 (1957)." *Page 866 Houston v. State, 354 So.2d at 829. Here, like Houston the prosecutor deliberately made multiple references to Qualls's post-arrest silence. As in Houston, "we cannot declare beyond a reasonable doubt that the prosecutor's comments were harmless because of the prosecutor's continuing references to the silence of the accused and the failure of the trial court to sustain each and every objection by defense counsel to the improper argument and testimony." Houston v. State, 354 So.2d at 829. I note that following this analysis the Houston Court, quoting Chapman v.United States, 547 F.2d at 1250, stated that finding harmless error "`must be sparingly employed'" in the context of the right to remain silent, but the error could be harmless.354 So.2d at 829.
 "`When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error. . . .'"
Houston v. State, 354 So.2d at 829 (quoting Chapman v. UnitedStates, 547 F.2d at 1250). As Judge Shaw states in his special writing, the Mixon Court extrapolated from Houston a three-pronged test for finding harmless error. As previously stated in this writing, I do not believe that a harmless-error analysis is confined to the Mixon test, but do believe that that analysis is useful.
For the reasons stated above, I would hold that the trial court erred in allowing the admission of evidence of Qualls's post-Miranda silence, and that such error was not harmless. Therefore, I would reverse the judgment of the circuit court and remand this cause to the Bullock Circuit Court for further proceedings.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] No such instruction was ever given to the jury.
[3] "It is the general rule that a defendant who voluntarily takes the witness stand in his own behalf and testifies without asserting the privilege against self-incrimination, waives his privilege as to the testimony given. . . ." Willingham v.State, 50 Ala.App. 363, 367, 279 So.2d 534, 538 (Crim. 1973) (emphasis added). Certainly the Court's holding in Houston v.State, 354 So.2d 825, 828 (Ala.Crim.App. 1977), contemplates that a defendant can retain his right to remain silent at arrest, even if he takes the stand in his own defense:
 "Not only is the prosecutor forbidden to use as evidence of substantive guilt the fact of defendant's silence following his arrest and Miranda warnings but the state may not constitutionally impeach a defendant's trial testimony with proof of post-arrest silence. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976)."
(Emphasis added.)